UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA        :
                                :
v.                              : CASE No. 8:09-CR-160-T-23TGW
                                :           8:10-CV-2036-T-23TGW
RANDY PETERSON                  :
                                :
_____:

## REPORT AND RECOMMENDATION

Defendant Randy Peterson filed a motion pursuant to 28 U.S.C. 2255 in which he alleged, among other things, that his retained attorney failed to honor his request to file an appeal on his behalf. The issue of whether that request was made and, consequently, whether the defendant is entitled to a delayed appeal, has been referred to me.

Based on the evidence presented at the hearing on this matter, I find that the defendant did not ask his former defense counsel to file an appeal. Consequently, I recommend that the defendant's request for a delayed appeal be denied.

I.

A. On April 14, 2009, defendant Randy Peterson was indicted on a charge of conspiracy to distribute, and possession with intent to

distribute, 100 kilograms or more of marijuana (Doc. 1).[1] The defendant retained attorney Joseph R. Fritz to represent him (Docs. 5, 13).

At the defendant's initial appearance, it was discussed that the defendant was facing a mandatory minimum ten-year sentence based on a prior state cocaine conviction, and that the defendant was ineligible for a safety valve reduction (Docs. 5, 8, 10). See 18 U.S.C. 3553(f). The court noted this circumstance created a risk of flight (Docs. 5, 8). Consequently, the defendant was detained pending trial (Doc. 5).

Trial was scheduled for June 22, 2009, before United States District Judge Steven D. Merryday (Doc. 22). Prior to trial, the Government filed a Notice of Prior Conviction pursuant to 21 U.S.C. 851, which stated that the defendant was subject to an enhancement of the mandatory minimum sentence based on his 1996 state court conviction for cocaine possession (Doc. 20).

On the morning of trial, the defendant pled guilty to the only count of the indictment pursuant to a plea agreement (Docs. 25, 39). The defendant, who has some college education, initialed each page of the plea

---

[1]For consistency, the document numbers refer to documents in the criminal case file unless otherwise noted. The page numbers refer to the pages assigned by CM/ECF.

agreement and certified at the end of the document that the plea agreement had been reviewed with him and that he understood its terms (see Doc. 25, p. 15; Doc. 39, p. 6).[2]  In particular, the first page of the plea agreement identified a mandatory minimum prison sentence of ten years (Doc. 25, p. 1). The plea agreement also included a waiver of the defendant's right to appeal and right to collaterally challenge his sentence except on the grounds that the sentence exceeds the defendant's applicable guidelines range as determined by the court, the sentence exceeds the statutory maximum penalty, or the sentence violates the Eighth Amendment to the Constitution (id., pp. 11-12).

During the plea colloquy, Judge Merryday reviewed the terms of the plea agreement and discussed with the defendant other civil and procedural rights he was relinquishing by pleading guilty (see Doc. 39). The defendant told Judge Merryday that he understood the mandatory minimum prison sentence was ten years, and acknowledged that he was generally

_____

[2]With regard to education, the defendant told Judge Merryday that he had obtained a GED and attended college for one and one-half years (Doc. 39, p. 6).  At the evidentiary hearing, the defendant stated that he had two years of college.  Additionally, Judge Merryday noted during the sentencing hearing that the defendant's business and real estate dealings showed mental agility (Doc. 37, p. 26).  The defendant also allegedly had been earning $6,000 monthly from gambling and, according to defense counsel, the defendant had a good understanding of how to bend the odds in his favor (Doc. 5; Doc. 37, pp. 24, 25).

waiving his right to appeal pursuant to the plea agreement's waiver provision (id., pp. 11- 12).

Judge Merryday concluded that there was a sufficient factual basis for the defendant's guilty plea; that the defendant understood the consequences of entering a guilty plea; and that he was doing so freely, intelligently, and voluntarily (id., p. 25). Consequently, Judge Merryday adjudicated the defendant guilty of count one of the indictment (id.).

The defendant appeared for sentencing on September 14, 2009, and Judge Merryday sentenced him to the mandatory minimum prison sentence of ten years (Docs. 30, 31). At that time, defense counsel stated repeatedly that the defendant was cooperating with the Government, and expressed to the court his opinion that the defendant was "on the right track for ... a Rule 35" motion to reduce his prison sentence (Doc. 37, pp. 5, 17-18, 19). The defendant also indicated to Judge Merryday that he was cooperating with the Government to "get this ten-year mandatory taken off me" (id., p. 23).

At the close of the sentencing hearing, Judge Merryday elaborated with respect to the defendant's right to appeal (id., pp. 29-30):

Mr. Peterson, in your plea agreement you have largely waived your right to appeal from this judgment and sentence unless I have sentenced you unlawfully, which typically means in excess of the statutory maximum or otherwise apart from the law.

I think I have not done that, so I suspect you have no right of appeal, but that is for you and Mr. Fritz to evaluate. To the extent that you do have some remaining right of appeal, there are two matters I should tell you.

First, you have the right to an attorney on appeal; that is, a lawyer....As it stands now, Mr. Fritz is required to preserve any appellate interest that you choose to pursue unless and until other counsel is substituted by an order of the Court.

Secondly, any notice of appeal ... must be made ... within ten days in writing....

. . .

In sum ... you have a right to a lawyer on appeal. Second, you have ten days in which to appeal or you lose that right forever.

Mr. Fritz, you are to consult with your client with respect to any appellate rights that he has.  If he instructs you to file an appeal, you are to do so, notwithstanding any conclusion that you might have that he has no right of appeal.

Mr. Fritz: Yes, sir.

The defendant did not file a direct appeal of his conviction or sentence.

On September 15, 2010, almost one year after his sentencing, the defendant filed a Motion to Vacate his Sentence Pursuant to 28 U.S.C. 2255 (Doc. 33; Doc. 1 in 8:10-CV-2036). The defendant alleged, among other things, that defense counsel was ineffective because he "did not pursue Appeal on petitioner's request to do so" (id., p. 4). Specifically, the defendant averred under the penalty of perjury that he "informed my counsel to file a Notice of Appeal, and he refused to do so upon my request" (Doc. 10, p. 10 in 8:10-CV-2036; see also Doc. 3, p. 5 in 8:10-CV-2036 ("Petitioner insisted that counsel file a Notice of Appeal ... counsel repeatedly refused")).

The Government filed a memorandum in opposition to the motion and attached an affidavit from Fritz, who averred that, "[w]hile an appeal was discussed on several telephone calls, I was never requested to file a Notice of Appeal" (Doc. 8 in 8:10-CV-2036; id., Att. A, ¶5). Fritz stated that the defendant instead requested him to take other action, comprised of investigating the defendant's prior state drug conviction (which made him ineligible for the safety valve option and was also the basis for his sentence enhancement), obtaining information regarding the outcomes of other related

-6-

cases, and negotiating with the case detective in anticipation of returning to court to obtain a sentence reduction for providing substantial assistance (id.). In closing, Fritz averred that the defendant "never communicated a directive to file an appeal telephonically or in writing" (id., ¶7).

Noting the contradictory affidavits from the defendant and defense counsel, the issue of whether the defendant is entitled to a delayed appeal was referred to me to conduct an evidentiary hearing and issue a report and recommendation (Doc. 22 in 8:10-CV-2036). The Federal Public Defender was appointed to represent the defendant (Doc. 26 in 8:10-CV-2036).[3]

B. The evidentiary hearing was held on June 11, 2014. The defendant was present with defense counsel, Assistant Federal Public Defender Yvette Gray (see Doc. 30 in 8:10-CV-2036). Assistant United States Attorney James Preston appeared on behalf of the Government. Testimony was received from the defendant; Joseph Fritz, defendant's former counsel; Deidre Marie Flowers, an investigator for the Federal Public Defender's Office; and Leticia Marie Ortiz-Peterson, the defendant's wife

---

[3]The hearing, originally scheduled for May 30, 2014, was continued until June 11, 2014, upon defense counsel's request.

(see id.).  Correspondence between the defendant and Fritz was also admitted into evidence (Def. Exs. 2-6).

Attorney Fritz testified that the defendant did not tell him to file an appeal following sentencing.  Further, when Fritz was asked whether the defendant had told him that he wanted to appeal, Fritz responded "absolutely not."  Thus, Fritz averred that, when he met with the defendant following sentencing, there were things that the defendant wanted him to do, but appeal was not one of them.  In this regard, Fritz stated that the defendant asked Fritz to (1) continue discussions with the Government concerning the defendant providing substantial assistance, (2) investigate the circumstances surrounding his prior state cocaine conviction, and (3) speak with attorney Frank Louderback, who represented a defendant that went to trial on a substantially similar case, but received a shorter prison sentence.  Fritz stated that he followed up with the defendant on those three topics (see Def. Exs. 2, 3, 4).

Fritz explained that he did not see a possible appellate remedy in this case because it was a mandatory minimum sentence that was not illegal, not in excess of the statutory minimum, and could not be considered

cruel and unusual punishment. Therefore, Fritz stated that he and the defendant agreed that an appeal would not get the defendant anywhere. However, Fritz testified that, if the defendant had requested him to file a notice of appeal, he would have. Thus, Fritz stated, "absolutely, it's no problem," and added that the notice of appeal is merely "one sheet of paper." Fritz stated, however, that an appeal is not where the defendant wanted to go; Fritz stated that the defendant wanted to get a substantial assistance motion, although that did not happen.

Fritz also testified that, as the defendant requested, he investigated the defendant's prior state cocaine conviction. However, that inquiry was not fruitful, either. Thus, Fritz explained that it was initially unclear whether the defendant had been adjudicated guilty on that charge. Fritz determined that, although the defendant had initially been placed on probation for the cocaine charge and adjudication was withheld, he was subsequently adjudicated guilty on the charge when he violated his probation by driving on a suspended license (see also Doc. 8, Att. A, ¶6 in 8:10-CV-2036).

Fritz stated that, in all, he had several communications with the defendant regarding his progress on the three topics that the defendant wanted him to investigate after sentencing. In this regard, defense counsel referred to correspondence between Fritz and the defendant. Importantly, Fritz noted that the word "appeal" does not appear in any of those letters.

In particular, defense counsel asked Fritz about Peterson's reference to "challenge my sentencing" in his November 2009 letter (Def. Ex. 5). Fritz testified that he believed that was a reference to Rule 35. Additionally, Fritz testified that he knew "exactly what [Peterson] was talking about" when Peterson stated in his April 8, 2010, letter that Peterson was concerned about "time running out" (Def. Ex. 6). Fritz stated that Peterson's comment referred to the two-year time frame for attacking the defendant's state court drug conviction, not an appeal of his federal case (see id. ("You can bring my prior back in court even though it's more than 2 yrs. I need you to get the prior back in state court.")).[4] Notably, Fritz's follow-up letter to

---

[4] Thus, after the defendant learned he had been properly adjudicated guilty on the state cocaine charge, he inquired with Fritz about pursuing a claim of ineffective assistance of counsel against his state court counsel on the grounds that the drugs were not his, and that counsel did not tell him that he could be adjudicated guilty if he violated his probation (see Def. Ex. 5).

-10-

Peterson states, consistent with Fritz's testimony, that "[w]e all agreed that the move to make was to attack the State prior in Pinellas County" (Def. Ex. 3; see also Def. Exs. 2, 4). In this connection, Fritz stated that, if the state court conviction could have been overturned, he would have gone back to the federal district court to seek a sentence reduction. Fritz emphasized, however, that it would not have involved a federal appeal.

Defendant Peterson testified next. Peterson testified that Fritz told him that he was looking at a sentence of 21-31 months. Peterson testified that it was not until Judge Merryday told him during the plea colloquy the possible penalties for the charge that he learned he was facing a 10-year mandatory minimum sentence. Thus, Peterson averred that, from the time he was first indicted, and up to the plea colloquy, Fritz had not told him that he was facing a mandatory minimum sentence of ten years.

Moreover, Peterson testified that, even after the plea colloquy, Fritz continued to tell him he would receive a prison sentence of 21-31 months. Therefore, Peterson stated that he was upset when he was sentenced to a mandatory minimum sentence of ten years. Peterson testified that he asked Fritz following the sentencing, "what's going on?" to which Fritz

-11-

allegedly responded "not to worry" and "we're attacking [the] sentence on appeal." On cross-examination, Peterson testified distinctly that he requested Fritz to appeal his sentence, and Fritz stated that he would. Peterson also testified, more vaguely, that Fritz "implied" that he was going to appeal. However, Peterson stated that, after his initial meeting with Fritz following the sentencing, the word "appeal" was not used by Fritz in their conversations, and they instead discussed "attacking the sentence."

With regard to his correspondence with Fritz, Peterson acknowledged that none of the letters mentioned an appeal. Peterson said that "challenge my sentence" is how they conversed. Consequently, although the word appeal was not used, Peterson testified that the "demeanor" of the conversations was "for appeal issues only."

Deidre Marie Flowers, an investigator with the Federal Public Defender's office, testified next. She testified briefly that she went to Fritz's office to review his file on Peterson's case, and while she was there Fritz told her that Peterson never said to appeal. The final witness was the defendant's wife, Leticia Peterson. She testified that she discussed with Fritz an appeal for a sentence reduction.

Counsel then gave closing arguments.  Defense counsel argued that the defendant is entitled to a delayed appeal because the evidence shows that Peterson told Fritz to file an appeal.  Counsel added that, although the correspondence between the defendant and Fritz did not mention an appeal, Peterson's reference to "challenging the sentence" insinuates that an appeal was being taken.

The Government argues that Peterson's testimony that he requested Fritz to appeal is a fabrication to provide the defendant with a basis for his §2255 motion.   Further, the Government contends that the correspondence between Peterson and Fritz does not show that Peterson had requested Fritz to file an appeal, but rather that Fritz made other efforts to get the defendant some relief from his sentence, which is further confirmed by the fact that the correspondence goes way beyond the ten-day appeal period.

## II.

Claims of ineffective assistance of counsel are considered under the standards set out in <u>Strickland</u> v. <u>Washington</u>, 466 U.S. 668 (1984). Under those standards, a defendant seeking relief on a claim of ineffective assistance of counsel, in general, has the burden of showing (1) that his

counsel's performance was deficient, and (2) that the deficient performance prejudiced the defense. Id. at 687.

The Supreme Court has applied the principles of Strickland v. Washington to a claim of ineffective assistance due to counsel's failure to prosecute a direct appeal. Roe v. Flores-Ortega, 528 U.S. 470 (2000). If an attorney disregards specific instructions from a defendant to file a notice of appeal, the attorney acts in an unreasonable manner and the defendant is entitled to a belated appeal without showing that the appeal is likely to have merit. Id. at 477. In Roe v. Flores-Ortega, the Supreme Court also set out principles for resolving situations where a defendant neither instructs counsel to file an appeal nor asks that an appeal not be taken. Id. at 477-81.

III.

Peterson asserts that counsel failed to follow his specific directive to file an appeal. Importantly, Peterson asserts no challenge to the adequacy of Fritz's consultations regarding an appeal. Thus, the claim, as alleged, is limited to the failure to carry out the request to file an appeal. Moreover, at the hearing, defense counsel made no argument relating to Fritz consulting with the defendant about an appeal. Consequently, the principles

-14-

set in <u>Roe</u> v. <u>Flores-Ortega</u> concerning consultation are inapposite.  The question here is simply whether or not the defendant asked Fritz to file an appeal.

As indicated, Peterson testified that immediately after sentencing he requested Fritz to file an appeal.  Fritz, on the other hand, stated that the defendant gave him no such instruction.  If Peterson's testimony on this point were accepted, that evidence would be sufficient to warrant the granting of a belated appeal.  However, I reject Peterson's testimony because it is not credible for several reasons.

Initially, Peterson's credibility is subject to question because he is a convicted felon and he has an interest in the outcome of this matter.  More importantly, the defendant testified inconsistently on crucial facts, and made statements under the penalty of perjury that were untrue.  Therefore, I simply do not believe the defendant.

Foremost, the defendant gave three different versions of his conversation with Fritz following the sentencing, which is the crux of this matter.  Thus, in Peterson's affidavit in support of his §2255 motion, Peterson attested under the penalty of perjury that  he "told counsel to file a Notice of

Appeal, counsel refused to do so" (Doc. 10, pp. 2, 3 in 8:10-CV-2036; <u>see</u>
<u>also</u> Doc. 3, p. 5 in 8:10-CV-2036 (Petitioner insisted that counsel "file a
Notice of Appeal ... counsel repeatedly refused.")).  However, during the
evidentiary hearing, the defendant testified that, not only had Fritz agreed to
file an appeal, but that Fritz told Peterson that he was going to file an appeal
without Peterson even making such a request.  Thus, Peterson testified that,
following the sentencing, he asked Fritz "what's going on," to which Fritz
allegedly responded "not to worry" and "we're attacking [the] sentence on
appeal."  On cross-examination, Peterson varied his testimony again, stating
that he requested Fritz to file an appeal, and that Fritz agreed to do so.  If the
defendant had in fact requested counsel to file an appeal, the defendant would
not have three different versions of that conversation.   Furthermore,
Peterson's averments that Fritz agreed, and refused, to take an appeal are
irreconcilable.  Thus, it is clear that Peterson lied to the court concerning the
substance of the critical conversation between him and Fritz that underlies
this dispute.

      Peterson was also blatantly untruthful when he testified that he
did not learn he was facing a mandatory minimum prison sentence of ten

years until Judge Merryday told him that during the plea colloquy. Thus, the defendant was told of the mandatory minimum sentence of ten years during his initial appearance before me. Further, that circumstance was emphasized at the initial appearance because it played a significant role in the defendant being detained pending trial (Doc. 5). Moreover, defense counsel discussed with Peterson the minimum mandatory sentence in connection with Peterson's execution of the plea agreement, as the defendant confirmed to Judge Merryday that counsel had reviewed every page of the plea agreement with him, and it plainly states on the first page of the plea agreement that the penalty is "a mandatory minimum term of imprisonment of ten (10) years up to Life" (Doc. 25, p. 1). This lie appears to be an attempt to buttress Peterson's contention that he was blindsided by the mandatory minimum 10-year prison sentence. In all events, the defendant's false testimony clearly undermines his credibility.

Moreover, other circumstances of the case are not consistent with Peterson's testimony that he directed Fritz to file an appeal. Thus, the word "appeal" does not appear in any of the correspondence between Peterson and Fritz. If, as Peterson averred, he asked Fritz to take an "appeal," and/or "file

a Notice of Appeal," it is implausible that neither Peterson nor Fritz would mention "appeal" in their communications which, according to Peterson, concerned the "appeal."

In an attempt to reconcile this significant inconsistency, defense counsel argues that the defendant is not highly educated and, therefore, the defendant referred to his appeal in correspondence as "challenging the sentencing" (see Def. Ex. 5). This contention is unpersuasive for several reasons. First, Peterson repeatedly attested, under the penalty of perjury, that he asked his counsel to file an "appeal." Therefore, Peterson was familiar with the term "appeal," and it lacks credulity that Peterson would initially request an appeal, but not refer to it as such in his subsequent communications with Fritz.[5]

Importantly, Fritz gave undisputed testimony that he distinguished between the filing of an appeal and investigating the possibility of a sentence reduction, which underscores that Peterson's reference to "challenge my sentencing" does not necessarily mean an appeal. This is

_____

[5]The contention that Peterson did not understand the term "appeal" is also belied by Peterson's educational and work background, and his correspondence to Fritz which reflects a working knowledge of several legal concepts (see n.2, supra; Def. Exs. 5, 6).

-18-

especially the case here since, as discussed below, there was nothing about Peterson's sentence to "challenge," and the possibility of a sentence reduction for providing cooperation to the Government was a viable option at the time of sentencing.

The Government also aptly notes that the correspondence between the defendant and Fritz goes far beyond the 10-day appeal period, and any reasonable extension that would be granted to file an appeal. This circumstance also undermines the contention that the letters concerned a federal appeal.

Finally, the defendant's testimony is not credible because there was no issue to appeal. It is recognized that, under <u>Roe</u> v. <u>Flores-Ortega</u>, the lack of merit does not defeat the defendant's claim. Nevertheless, it has a bearing on the defendant's credibility.

The defendant pled guilty pursuant to a plea agreement, which he acknowledged greatly limited the grounds under which he could appeal. That appeal waiver, in conjunction with the defendant receiving the shortest possible sentence in light of the mandatory minimum provision, eliminated the possibility of a nonfrivolous appeal. Furthermore, Judge Merryday

strongly admonished the defendant at both the plea colloquy and the sentencing that the defendant was essentially waiving all of his appeal rights, which makes less credible the defendant's testimony that following sentencing he immediately and emphatically requested Fritz to file an appeal.

On the other hand, I find credible attorney Joseph Fritz's testimony that he was not asked to file an appeal of this case. Thus, in contrast to Peterson, Fritz has no interest in the outcome of this matter and has no apparent reason to prevaricate. To the contrary, as Fritz testified, it would have been "absolutely no problem" to file a notice of appeal if Peterson had asked him to do so, as it merely involves filing one piece of paper. Notably, filing a notice of appeal would have involved a lot less effort than Fritz expended on investigating the possibility of a sentence reduction.

Furthermore, unlike Peterson's testimony, Fritz's testimony is consistent with the circumstances of this case. Thus, Fritz's testimony that he and Peterson agreed it would be fruitless to file an appeal, and to investigate instead a possible sentence reduction, is consistent with the circumstance that there was no nonfrivolous ground for appeal. Further, the sentencing transcript makes clear that cooperation with the Government, in

anticipation of a Rule 35 motion to reduce Peterson's sentence, was at the front of the defense's strategy, as both Fritz and the defendant mentioned to Judge Merryday that the defendant was cooperating with the Government for that reason.

Moreover, as discussed, the absence of the word "appeal" from their correspondence is a compelling circumstance that supports Fritz's testimony. Further, Peterson's November 2009 letter to Fritz mentions a sentence reduction (Def. Ex. 5). Additionally, consistent with Fritz's testimony that he was also investigating whether the state drug conviction could be set aside in the hope of seeking a sentence reduction, Fritz stated in subsequent correspondence to Peterson that "[w]e all agreed that the move to make was to attack the State prior in Pinellas County" (Def. Ex. 3). In sum, the correspondence between the defendant and Fritz is also more consistent with Fritz's testimony than the defendant's testimony.

In addition, as previously indicated, at the end of the sentencing hearing, Judge Merryday stated (Doc. 37, p. 30):

> Mr. Fritz, you are to consult with your client with respect to any appellate rights that he has. If he instructs you to file an appeal, you are to do so,

-21-

notwithstanding any conclusion that you might
have that he has no right of appeal.

Fritz responded, "Yes, sir" (id.).  There is nothing in the record to suggest,

and I have no reason to believe, that Fritz would not comply with such an

express direction from a federal judge.

Finally, it is noted that, unlike Peterson's testimony, Fritz's

testimony at the hearing was consistent with his affidavit.

For these reasons, I reject as not credible the defendant's

testimony that he asked Fritz to take an appeal.  In other words, I find that the

defendant did not request Fritz to appeal.  I therefore recommend that the

defendant's request for a belated appeal be denied.

Respectfully submitted,

THOMAS G. WILSON
DATED: JUNE 3ᵈ, 2014     UNITED STATES MAGISTRATE JUDGE

## NOTICE TO PARTIES

Failure to file written objections to the proposed findings and

recommendations contained in this report within fourteen days from the date

of its service shall bar an aggrieved party from attacking the factual findings

on appeal.  28 U.S.C. 636(b)(1).